UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON,

       Plaintiff,

v.                                       Case No. 2:12-cv-429
                                         HON. GORDON J. QUIST
JIM ALEXANDER, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Corielle Johnson, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Deputy Warden Jim Alexander, Corrections Officer Unknown Nadeau, Assistant Resident Unit Supervisor Unknown Marshall, Assistant Resident Unit Supervisor Unknown Viitala, Grievance Coordinator Glen Caron, Warden Robert Napels, and Assistant Unit Supervisor Unknown LaRock. During the pertinent time period, Plaintiff was confined at the Marquette Branch Prison (MBP) and Defendants were employed at MBP. Defendants Alexander, Caron, and Napels were dismissed from this action on March 8, 2013. Plaintiff is asserting a retaliation claim against the remaining Defendants Nadeau, Marshall, Viitala, and LaRock.

Plaintiff's complaint alleges that when he arrived at MBP in February of 2012, he filed a lawsuit against 40 MDOC employees from MBP, AMF, and Ionia Max. Shortly thereafter, Plaintiff began to receive comments and threats from staff. On April 24, while Plaintiff was on suicide watch, he was found in his cell hanging from the sprinkler pole by Corrections Officer Davis, who hit the panic button. Sergeant Hoult arrived and sprayed him with a whole container of

chemical agent before extracting him from the cell. Plaintiff was taken from the pole and slammed to the ground, banging his head. Plaintiff was then kicked, stomped and dragged from his cell.

Plaintiff subsequently filed grievances and contacted his Ombudsman. On October 12, 2012, Plaintiff returned from seeing his psychologist to find his cell destroyed and his ear phones and papers missing. Other prisoners told Plaintiff that Defendants Marshall, Viitala, and LaRock were responsible for destroying his cell and that they had been overheard saying that Plaintiff wrote too many grievances. On October 15, 2012, Defendants Marshall and Viitala admitted that they had flipped Plaintiff's files over "in jest." On October 18, 2012, Plaintiff asked Defendant Nadeau about his ear phones and missing papers. Defendant Nadeau responded, "Yeah I was in there, you wanna run your mouth, lying on your grievances, you know how it goes." On October 18, 2012, Plaintiff filed grievances on Defendants Marshall, Viitala, and Nadeau. On October 19, 2012, Defendants Caron and Alexander spoke to Defendant Napels and had Plaintiff placed on modified access to the grievance procedure. Plaintiff seeks damages.

Presently before the Court is the Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (docket #48). Plaintiff has filed a response (docket #50) and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed

in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants contend that Plaintiff's retaliation claim lacks merit. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants retaliated against him for his conduct in filing grievances and lawsuits by making threats against him and by taking legal documents and earphones from his cell during a shakedown. As noted above, Plaintiff claims that he was told by other

- 3 -

prisoners, who were present during that shakedown, that Defendants Marshall, Viitala, and LaRock were responsible for destroying his cell. These inmates also told Plaintiff that they overheard Defendants Marshall, Viitala, and LaRock saying that Plaintiff wrote too many grievances. Plaintiff asserts that on October 15, 2012, Defendants Marshall and Viitala admitted that they had flipped Plaintiff's files over "in jest." On October 18, 2012, Plaintiff asked Defendant Nadeau about his ear phones and missing papers. Defendant Nadeau responded, "Yeah I was in there, you wanna run your mouth, lying on your grievances, you know how it goes." On October 18, 2012, Plaintiff filed grievances on Defendants Marshall, Viitala, and Nadeau.

The filing of a prison grievance and / or law suit is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). In addition, the confiscation of legal papers during a cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)).

In his affidavit, Defendant Nadeau attest that he never discussed Plaintiff's grievances and lawsuits with other staff, nor did he overhear such discussions. Defendant Nadeau does not recall seeing Defendants Viitala and Marshall in Plaintiff's cell on October 12, 2012, and denies talking to Plaintiff about his missing property on October 18, 2012. *See* docket #49-3. Defendant LaRock attests that he never discussed the fact that Plaintiff was an "asshole" because he wrote too many grievances with Defendants Marshall and Viitala, nor did he witness such a discussion. Defendant LaRock recalls being in B Block where Defendant Viitala was assigned while being trained by Defendant Marshall, but he denies entering Plaintiff's cell or removing or

- 4 -

destroying Plaintiff's property. *See* docket #49-4. In Defendant Marshall's affidavit, he attests that he recalls entering Plaintiff's cell, but does not recall if it was on October 12, 2012. Defendant Marshall denies ever removing or destroying Plaintiff's property. *See* docket #49-5. Defendant Viitala attests that he never discussed the fact that Plaintiff wrote too many grievances or that he was an "asshole" with Defendants Marshall and LaRock. Defendant Viitala recalls entering Plaintiff's cell, but does not recall if it was on October 12, 2012. Defendant Viitala denies ever removing or destroying Plaintiff's property. *See* docket #49-6.

In Plaintiff's deposition, he testified that on October 12, 2012, while he was at a psych appointment, his neighbor, Inmate Thomas, observed Defendants Marshall, Viitala, and LaRock outside Plaintiff's cell and heard them saying that Plaintiff was an asshole who wrote too many grievances and masturbated. *See* docket #49-7, p. 15. Plaintiff stated that another neighbor, whose name he did not know, also reported overhearing the same conversation. *Id*. p. 16. Plaintiff testified that when he returned from his psych callout, he found things scattered all over his cell and asked his neighbors what had happened. Plaintiff testified that his neighbors responded:

> "Oh, yeah, Marshal, Viitala and LaRock was standing in front of your cell talking about you write too many grievances, you a asshole always flipping your dick out," and ultimately they entered my cell. And they wrong. I had asked Nadeau if he had been in there, and he was like, "Yeah, he was in here." He say - he said, "Yeah, I was in there." He say, "Yeah, I was in there. You want to run your mouth a lot?" Something, he say, "Yeah I was in there. You want to run your mouth a lot on grievances or something, you know how it goes."

*Id.* at 16.

With regard to Defendant Nadeau, Plaintiff testified that on October 18, 2012, he asked Defendant Nadeau if he had gone into Plaintiff's cell during the shakedown. Plaintiff testified that Defendant Nadeau admitted going into the cell: "[H]e told me, like, 'Yeah, I was in there. You

- 5 -

want to run your mouth lying on grievances, you know how it goes,' something of that nature. That ain't verbatim, though." *Id.* at 17. Plaintiff further testified:

> Q	Now, these inmates that you talked to about who was standing in front of your cell, did anybody see any of these officers go into your cell?
>
> A	Yeah. Thomas was my neighbor. He seen them. And the dude upstairs, he even seen them go in there. They admitted to going in there, though.
>
> Q	The dude upstairs is who?
>
> A	I don't know his name. He was on top of me. I was in - what was I in? I was in 9 Base in Echo, so he would have been in 1-9 Echo.
>
> Q	So he's another inmate?
>
> A	Yeah.
>
> Q	And he -
>
> A	But Thomas, I seen him go in there.
>
> Q	Thomas saw him go in? That's what he told you?
>
> A	Because - yeah, he my neighbor. He my neighbor on my left so he could see.
>
> Q	But how did the dude upstairs -
>
> A	But they admitted going in my cell.
>
> Q	- hold on here. How did the dude upstairs see anyone go into your cell?
>
> A.	Because his cell is right on top of me, and it's like they's got a porch. So this (indicating) would be my cell and it'd be a porch right here and then a door to come into my cell. Now, this porch on top of me is the same width of the walkway upstairs. So if you in front of my cell, you standing out like this upstairs, you would be standing right here in front of my cell. Do you understand what I'm saying?
>
> Q	But then they wouldn't be able to see if anyone went into your cell from there, would they?

> A    Yeah.  If you looking down - you looking down from the rail, if you go in - you could see you go in.  The door open and you could see someone walk right in.

*Id.* at 17-18.

Plaintiff testified that on October 5, 2012, he asked Defendant Nadeau to leave him alone and Defendant Nadeau responded, "No, you like to do other people's time." Plaintiff stated "And he told me - he was like - he let me know that he knew that I helped Thomas do what he did because Thomas don't know how to cite the excessive force and that policy dealing with gas and all that." *Id.* at 24.  Plaintiff also testified that on October 6, 2012, Defendant Nadeau told him, "We know you helped Thomas with those grievances.  You want to get in other people's business, well, we can play that game, too." *Id.* at 25.  On October 10, 2012, Defendant Nadeau approached Plaintiff while he was sweeping and began taunting him, telling Plaintiff to throw the broom. "Throw the broom.  I want to gas the shit out of you.  Come on.  I'm going to gas the fuck out of you." *Id.* at 25-26.  Plaintiff responded by saying "Man, come and get this bitch ass shit.  I'm just write you up." *Id.* at 26.

After a careful review of the record in this case, the undersigned concludes that Plaintiff's allegations present genuine issues of material fact with regard to whether Defendants Nadeau, Marshall, Viitala, and LaRock retaliated against him for his activity in filing grievances and lawsuits by removing legal papers and earphones from his cell during a shakedown.  Therefore, Defendants are not entitled to summary judgment on the merits of Plaintiff's retaliation claims.

Moreover, Defendants' claim that they were not personally involved in the alleged misconduct lacks merit.  As noted above, there is a genuine issue of material fact regarding whether Defendants removed items from Plaintiff's cell as a result of Plaintiff's conduct in filing grievances and lawsuits.  Such conduct is sufficient to show personal involvement.

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

Defendants state that they are entitled to qualified immunity because they have denied all misconduct in this case. Defendants are mistaken. As noted above, there is a genuine issue of material fact regarding whether Defendants retaliated against Plaintiff for his use of the grievance and legal systems by removing items from his cell during a shakedown. Because the right to be free from retaliation for the exercise of constitutional rights is well established, *see Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), Defendants are not entitled to qualified immunity.

Finally, Defendants claim that Plaintiff failed to exhaust his claims against Defendant LaRock. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216; 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable

trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

In this case, as noted by the court in the March 27, 2014, order rejecting the Report and Recommendation, Plaintiff discovered that property had been removed from his cell following a shakedown on October 12, 2012. Other inmates advised Plaintiff that Defendants were responsible for the missing property. On October 18, 2012, Plaintiff filed a grievance regarding this issue, but Plaintiff did not receive an acknowledgment indicating that his grievance had been filed, as was customary. On October 22, 2012, Plaintiff was informed that he had been placed on modified access to the grievance procedure. Plaintiff subsequently requested a grievance form for the incident, but his request was denied. On November 13, 2012, Plaintiff filed the instant complaint. On November 27, 2012, Plaintiff's step I grievance was rejected and returned to him. Plaintiff then appealed the denial to steps II and III.

Defendants now assert that Defendant LaRock is entitled to summary judgment for failure to exhaust administrative remedies because Defendant LaRock was not named in the step I grievance that Plaintiff filed on October 18, 2012. In support of this claim, Defendants offer a copy of grievance number MBP12100287817G as an exhibit to their motion. *See* docket #49-2. A review of this grievance reveals that Defendants are correct. Plaintiff fails to name Defendant LaRock in his grievance, which asserts that Defendants Marshall, Viitala, and Nadeau entered his cell and took his property. In fact, Defendant LaRock was the step I respondent. Accordingly, Defendant LaRock is entitled to summary judgment for lack of exhaustion.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed as barred by the Eleventh Amendment. In addition, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket #48) be granted as to Defendant LaRock for lack of exhaustion, and be denied as to the remaining Defendants.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: December 17, 2014